UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARVIN CADE                                    CIVIL ACTION

VERSUS                                         NO: 06-7080

THE CITY OF KENNER                             SECTION: "R"

## ORDER AND REASONS

Before the Court is the City of Kenner's motion for summary judgment.  For the following reasons, the Court GRANTS the City's motion.


I.  Background

Before Hurricane Katrina, the City of Kenner, Louisiana, employed plaintiff Marvin Cade as a Utility Worker in its Recreation Department.  As the hurricane approached Louisiana in August of 2005, the City released all non-essential employees, including Cade, from duty.  Cade and his family evacuated the city and traveled to Katy, Texas.  The City gave all employees ten work days of paid emergency leave to attend to Katrina-related problems.  (*See* R. Doc. 17-16 at 8-9.)  On September 9, 2005, it posted an announcement on its website notifying all City employees that they were "expected to return to work Wednesday, September 14, 2005," which was the day after the period of paid emergency leave ended.  (R. Doc. 17-12.)

-1-

Many employees did not return by the September 14 deadline, and rather than terminating them, the City granted a series of extensions.  First, employees were credited with the amount of vacation and compensatory time they had accrued.  If the employee had not returned when their vacation time was used up, the City granted him or her ten additional work days of leave without pay. (*See* R. Doc. 17-18 at 5-6.)  Finally, upon discovering that many employees still had not returned by the end of the first leave without pay period, the City granted its employees another ten days of leave without pay.  (*See* R. Doc. 17-15 at 9-10.) Employees who did not return by the end of this second period of leave without pay were terminated.  (*See id.* at 15; R. Doc. 17-17 at 3-4.)

Because Cade's house in Kenner had been damaged by the storm, Cade remained in Texas past the September 14 deadline.  As it had with its other employees, the City credited Cade with his accrued vacation time and twenty days of leave without pay.  This made Cade eligible for termination if he failed to return by October 17, 2005.

Between the end of the storm and October 17, Cade was in contact with various City officials.  Cade contends that he repeatedly expressed interest in returning to his job but was unable to leave Texas because he had no housing in Kenner for his

family.[1]  On October 4, Cade sent the City a fax expressing his continued interest in returning to work and asking for "3 to 6 months to get [his] house back to living standards."  (R. Doc. 17-6.)  The City did not respond to Cade's fax.  On October 17, Cade still had not returned to work, and the City terminated his employment.

On March 28, 2006, Cade filed a charge with the EEOC, alleging that he had been terminated because he is African-American.  After conducting an investigation, the EEOC closed its file on July 10, 2006, and gave Cade a notice of right to sue. Cade commenced an action in this Court on October 2, 2006, alleging that the City had illegally terminated him because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).  Before the Court is the City's motion for summary judgment.

II.  Legal Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for

---

[1] The City offered to provide Cade with a cot at the Lion's Club in Kenner.  Cade declined the offer because the City was unable to accommodate Cade's family.

-3-

the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1996).

III.  Discussion

A plaintiff who seeks to prove that his employer discriminated against him in violation of Title VII can do so by submitting either direct evidence of intentional discrimination

-4-

or, more commonly, circumstantial evidence.  *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).  Because Cade seeks to establish his claim by circumstantial evidence (*see* R. Doc. 21 at 9), the three-part framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), applies.  First, the plaintiff must make out a prima facie case of employment discrimination by proving that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).  If the plaintiff carries his burden, a presumption arises that the employer unlawfully discriminated against him.  *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  The defendant, in turn, may rebut this presumption by articulating a "a legitimate, nondiscriminatory reason for its decision."  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).  Finally, if the defendant produces evidence of a nondiscriminatory reason for the discharge, the burden shifts back to the plaintiff to prove that "the employer's proffered reason is not true but instead is a pretext for the real

-5-

discriminatory . . . purpose." *McCoy*, 492 F.3d at 557.  The
plaintiff may do so either "through evidence of disparate
treatment or by showing that the employer's proffered explanation
is false or 'unworthy of credence,'" meaning that the explanation
"is not the real reason for the adverse employment action."
*Laxton*, 333 F.3d at 578 (citing *Reeves v. Sanderson Plumbing
Prods., Inc.*, 530 U.S. 133, 143 (2000)).

A.   Prima Facie Case

     Here, Cade has failed to establish a prima facie case of
illegal discrimination or to point to disputed material facts
that establish a genuine issue for trial.   The City concedes that
Cade is a member of a protected group (*see* R. Doc. 17-3 at 13)
and does not appear to contest that he was qualified for his
position (*see id.* at 12-14).   Though the City contends that it
never made an adverse employment decision because Cade
voluntarily "gave up his position" (*see id.* at 13), the Court
finds that there is at least an issue of fact as to whether the
City terminated Cade.   Cade's claim is that the City concealed
the mandatory return date from him and failed to record his
stated interest in returning.   Under Cade's version of the facts,
Cade was "discharged" within the meaning of 42 U.S.C. § 2000e-
2(a)(1).   *See Willis v. Coca Cola Enterprises, Inc.*, 445 F.3d
413, 416, 420 (5th Cir. 2006) (treating employment action arising

-6-

out of employee's violation of attendance policy as a discharge, despite employer's characterization as a voluntary resignation); *see also Zamora v. Elite Logistics, Inc.*, 316 F. Supp. 2d 1107, 1119-20 (D. Kan. 2004) (focusing on whether employee "formally resigned"), *aff'd en banc* 478 F.3d 1160 (10th Cir. 2007).  The City has failed to show the absence of a genuine issue of material fact on whether the plaintiff suffered an adverse employment action.

To establish the fourth element, Cade must show that he "was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy*, 492 F.3d at 551.  Cade does not argue that he was replaced by an employee outside his protected group.  (*See* R. Doc. 21 at 11.)  Instead, he attempts to show that he was treated less favorably than his white peers.  First, he offers evidence that his superintendent, Eddie Corcoran, displayed racial animus on numerous occasions before Cade's leave of absence.  (*See, e.g.*, R. Doc. 21-3 (alleging that Corcoran used a racial epithet to refer to African-American employees).)  Even taking these allegations to be true, however, they do not suggest that Cade was discharged based on his race.  In order for discriminatory comments to support an inference of racially motivated action, the speaker must be "in a position to influence the [employment] decision." *Palasota v. Haggar Clothing Co.*, 342

F.3d 569, 578 (5th Cir. 2003); *see also Laxton*, 333 F.3d at 583
("The remark must, first, demonstrate discriminatory animus and,
second, be made by a person primarily responsible for the adverse
employment action or by a person with influence or leverage over
the formal decisionmaker."). In this case, the City points out--
and Cade does not dispute--that Corcoran played no part in the
decision to discharge Cade. Absent some evidence of Corcoran's
involvement in the decision, his pre-Katrina conduct is not
relevant to the question of why Cade was terminated.

Cade also points to the earlier conduct of Phil Ramon, Chief
of Staff to the Mayor of Kenner, to suggest that the discharge
was racially motivated. Cade recounts several incidents in which
he reported to Ramon what he perceived as racially discriminatory
treatment, and Ramon allegedly failed to take appropriate action.
Both parties agree that Ramon was involved in the discharge
decision. Again, however, the evidence does not support an
inference that Cade's discharge was racially motivated.[2]  In
contrast to the plaintiffs in other Fifth Circuit cases, Cade has
not identified any remarks or conduct that could fairly be
described as evidencing racial animus. *Compare Laxton*, 333 F.3d
at 583 (finding that a jury may infer discriminatory animus from
supervisor's visible anger and heated remark upon learning that

---

[2] Though it might be relevant evidence of unlawful
retaliation, Cade admits that he has not stated a claim for
retaliation. (*See* R. Doc. 21 at 18.)

-8-

plaintiff was pregnant) *and Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) ("We determine that the jury could find the repeated use of 'old bitch' indicates that [plaintiff's coworker] had discriminatory motivations.") *with* R. Doc. 21 at 7 (alleging that Ramon described an investigation prompted by Cade's complaints as a "wild goose chase").  Indeed, notwithstanding the allegedly insufficient attention devoted to Cade's complaints, Cade points to no aspect of Ramon's conduct that suggests racial motivation at all.

Finally, Cade argues that he "was not given the same opportunity to return to work with the City after Hurricane Katrina as other white employees."  (R. Doc. 21 at 12.)  If true--that is, if the City accommodated its white employees' storm-related needs but not Cade's--the City's conduct could support an inference of racially motivated treatment.  Cade, however, does not offer any evidence to show that the City treated its white employees better than it treated him.  Though he cites a variety of ways in which the City supposedly treated him "unfavorably" in the aftermath of Katrina (*see, e.g.*, R. Doc. 21 at 13 ("Further, [Phil] Ramon did not inform Cade that he should call Human Resources or the Recreation Department to apprise them of his intent and ability to return.")), he does not explain how the City's treatment of its white employees was any better.  The evidence he cites, though possibly indicative of a communications

failure, does not support an inference of racially discriminatory treatment.

The only arguably relevant evidence of disparate treatment that Cade offers is contained in an employee status sheet provided by the City. (*See* R. Doc. 17-5.)  Cade argues that the sheet, which the City used to track the employees who had not returned to work, shows that the City treated its white employees better than it treated him.  Specifically, he argues that the mayor's office personnel made careful records of "a white employee's" phone calls but "said nothing about [Cade's] many phone calls." (R. Doc. 21 at 18.)  Though Cade does not identify the white employee, the Court infers it to be Wilford Marcotte. (*Compare* R. Doc. 21 at 18 (noting that the spreadsheet entries "specifically mentioned that the white employee was 'trying to return'") *with* R. Doc. 17-5 at 2 (spreadsheet entry noting that Wilford Marcotte was "trying to return").)  The Court finds Cade's comparison to be inapposite because Marcotte returned to work before his period of leave without pay expired. (*See* R. Doc. 33 at 2.)  Even if it is true that the City more carefully recorded the communications of white employees, Cade offers no evidence to show that this superior treatment permitted any employee to remain on leave beyond the period allowed to Cade.

-10-

Though there are disputed issues of fact in this case, none of those issues is "material" under FED. R. CIV. P. 56(c).[3]  For example, although Cade and the City disagree about the extent and nature of Cade's communications with the City before the October 17 deadline, the dispute is immaterial because no possible resolution would support a judgment in Cade's favor.  Cade has neither provided direct evidence of an unlawful employment action, nor made out a prima facie case under the *McDonnell Douglas* framework.  The factual disputes do not "affect the outcome of the suit under the governing law" and so "will not be counted." *Anderson*, 477 U.S. 242 at 248.  Because Cade has failed to provide evidence that would "enable a reasonable jury to return a verdict in [his] favor," *Lavespere*, 910 F.2d at 178, summary judgment must be granted in favor of the City.

## B.  Pretext

Even if the Court assumes that Cade has made out a prima facie case of discrimination, his claim fails at the third stage

---

[3] *See* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2725 (3d. ed. 1998) ("[F]ederal courts have held that a fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail.  On the other hand, a factual issue that is not necessary to the decision is not material within the meaning of Rule 56(c) and a motion for summary judgment may be granted without regard to whether it is in dispute.").

of the *McDonnell Douglas* analysis.   The City has offered a
legitimate, nondiscriminatory reason for its discharge decision:
Cade failed to report to work by the October 17 deadline.   *Cf.*
*Stroud v. BMC Software, Inc.*, 2008 WL 2325639 at *6 (5th Cir.
2008) (treating absenteeism as a legitimate reason for
discharge); *Willis*, 445 F.3d at 420-21 (same).   To show that this
explanation is pretextual, Cade argues that the City has falsely
labeled the discharge a "voluntary" resignation.   Though the
City's choice of words may be inappropriate, *see supra*, its
explanation is valid no matter how the discharge is
characterized.   Cade not does contest or otherwise cast doubt on
the City's claim that it set a race-neutral return deadline and
terminated Cade for failing to show up by that deadline.   Because
Cade has not advanced any reason to disbelieve the core of the
City's explanation, he has not met his burden of showing that the
explanation is pretextual.

Cade also points to his earlier interactions with Eddie
Corcoran and Phil Ramon and his post-Katrina communications with
the City as independent evidence supporting his pretext argument.
For the reasons described above, however, this evidence does not
bear on the question of whether the City terminated Cade based on
his race.   Because Cade has produced no evidence at all to impugn
the City's proffered explanation, there remains no genuine issue
of material fact to be resolved at trial, and the City is

-12-

entitled to summary judgment.  *See Willis*, 445 F.3d at 421

(affirming grant of summary judgment because employee had not

"produced sufficient evidence to raise a fact issue as to whether

[employer] used her violation of [the employer's attendance]

policy as a mere pretext for a discriminatory firing"); *Keelan v.*

*Majesco Software, Inc.*, 407 F.3d 332, 345 (5th Cir. 2005)

(affirming grant of summary judgment because plaintiff "created

no fact issue that [defendant's] stated grounds for his

termination were 'unworthy of credence.'").


IV.  Conclusion

     For the foregoing reasons, the City of Kenner's motion for

summary judgment is GRANTED and the case is dismissed with

prejudice.


     New Orleans, Louisiana, this <u>17th</u> day of September, 2008.


                    _____
                         SARAH S. VANCE
                    UNITED STATES DISTRICT JUDGE


                              -13-